# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, as assignee of CHESAPEAKE OPERATING, INC., | No. 4:22-CV-01465 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| FIRST MERCURY INSURANCE CO., | |
| Defendant. | |

## MEMORANDUM OPINION

### MARCH 31, 2023

Plaintiff Schlumberger Technology Corporation ("Schlumberger") sues Defendant First Mercury Insurance Co. ("First Mercury") for claims arising out of First Mercury's refusal to defend and/or indemnify Schlumberger with respect to a personal injury lawsuit and subsequent judgment against it. First Mercury's alleged obligation to defend Schlumberger arises from a complex relationship involving Schlumberger and several other corporate entities. First Mercury now moves to dismiss Count III of Schlumberger's Complaint, which alleges that First Mercury acted in bad faith when it disclaimed coverage of the suit and judgment against Schlumberger.

I.  **BACKGROUND**

A.  **Underlying Facts**

In 2007, Chesapeake Appalachia, LLC ("CALLC") entered into a Master Service Agreement with Schlumberger (the "CALLC-Schlumberger MSA").[1] In the CALLC-Schlumberger MSA, CALLC "agreed 'to defend [and] indemnify . . . [Schlumberger and its] . . . employees from and against all claims . . . arising in connection herewith in favor of [CALLC's] . . . contractors and subcontractors and their respective . . . employees and invitees on account of bodily injury."[2]

In 2008, Chesapeake Operating, Inc. ("COI"), an affiliate of CALLC, entered into an MSA with an entity doing business as SweetH2O (the "COI-SweetH2O MSA").[3] In the COI-SweetH2O MSA, SweetH2O agreed to "to defend [and] indemnify . . . [COI and its present or future affiliates and their] . . . invitees . . . against all claims . . . arising in connection herewith in favor of [SweetH2O's] employees, [SweetH2O's] subcontractors or their employees, or [SweetH2O's] invitees on account of bodily injury."[4] The COI-SweetH2O MSA further provided that SweetH2O was to "obtain insurance to cover [SweetH2O's] defense and indemnity obligations and to add COI and [COI's] present or future affiliates to its policy as additional insureds."[5] "Pursuant to the [COI-SweetH2O MSA], SweetH2O

---

[1]  Compl., Doc. 1-1 ¶ 4; CALLC-Schlumberger MSA, Doc. 1-2.
[2]  Compl., Doc. 1-1 ¶ 4 (quoting CALLC-Schlumberger MSA, Doc. 1-2 at 11-12 (§ 9.3)).
[3]  Compl., Doc. 1-1 ¶¶ 5, 10; COI-SweetH2O MSA, Doc. 1-3.
[4]  Compl., Doc. 1-1 ¶ 5 (quoting COI-SweetH2O MSA, Doc. 1-3 at 12 (§ 6.2)).
[5]  *Id.* ¶ 7 (citing COI-SweetH2O MSA, Doc. 1-3 at 9-11).

2

subsequently purchased a general commercial liability ("CGL") policy from First Mercury, naming COI and any present or future affiliates as additional insureds."[6] The ensuing certificate of insurance lists as certificate holders COI "and any present or future subsidiaries or affiliates named directly or indirectly."[7]

At some point following the execution of both MSAs, CALLC retained both SweetH2O and Schlumberger to do work on one its oil and gas sites in Troy, Bradford County, Pennsylvania.[8] In November 2010, Michael J. Mudra, Sr., who was either SweetH2O's employee or an employee of SweetH2O's subcontractor, was injured while working at CALLC's worksite.[9] Mudra later sued Schlumberger in the Court of Common Pleas of Bradford County, alleging that he tripped over hoses that Schlumberger negligently placed (the "Mudra Litigation").[10]

Schlumberger demanded that CALLLC defend it pursuant to the CALLC-Schlumberger MSA's indemnification clause.[11] COI, CALLC's affiliate, then tendered Schlumberger's demand to SweetH2O by virtue of the SweetH2O-COI MSA's indemnification clause.[12] COI also put First Mercury, SweetH2O's insurer, on notice of Schlumberger's claim.[13]

---

[6]  Id. ¶ 8 (citing ACORD Certificate of Liability Insurance, Doc. 1-4).
[7]  ACORD Certificate of Liability Insurance, Doc. 1-4.
[8]  Compl., Doc. 1-1 ¶ 11.
[9]  Id. ¶¶ 12-13.
[10] Id. ¶ 15.
[11] Id. ¶ 17.
[12] Id. ¶ 18.
[13] Id.

First Mercury investigated Schlumberger's indemnification claim and initially disclaimed coverage on the basis that "CALLC was not 'named or indirectly named' at any point in the [SweetH2O-COI] MSA."[14] COI disputed First Mercury's denial and provided it information that that CALLC was COI's affiliate and therefore entitled to coverage.[15]

First Mercury responded by denying coverage again, but for a different, "superseding" reason: that even if CALLC was COI's affiliate, First Mercury's coverage was only for injuries caused by SweetH2O, and based on the evidence First Mercury had at the time, the Mudra Litigation did not involve injuries caused by SweetH2O.[16]

Although Mudra's relationship to SweetH2O was not entirely clear, First Mercury also responded that, by virtue of policy exclusions, it did not cover injuries suffered by: (1) SweetH2O's employees in the course of their employment (the "Employer's Liability Exclusion"),[17] (2) workers "leased to [SweetH2O] by a labor leasing firm under an agreement between [SweetH2O] and the labor leasing firm, to perform duties related to the conduct of [SweetH2O's] business" or "furnished to [SweetH2O] for a finite period to support or supplement your work force in special situations such as employee absences, temporary skill shortages and seasonal

---

[14] *Id.* ¶ 20 (quoting First Mercery Denial Ltr., Doc. 1-11 at 7).
[15] *See id.* ¶ 21.
[16] *See id.* ¶ 22 (quoting Second Denial Ltr. Doc. 1-13).
[17] *See* Second Denial Ltr. Doc. 1-13 at 6-7 (§ 2.e); *id.* at 11 (discussing Employer's Liability Exclusion as basis for denial of coverage).

4

workloads" (the "Leased and Temporary Workers Injury Exclusion")[18]. First Mercury reasoned that Mudra fell into one of those three categories and therefore disclaimed coverage,[19] noting that SweetH2O's subcontractor appeared to be a "staffing agency"[20].

The Mudra Litigation eventually went to a jury trial, resulting in a verdict and award of money damages against Schlumberger.[21]

### B. Procedural History

Schlumberger filed suit against First Mercury in state court, seeking a declaration that the COI-SweetH2O MSA requires First Mercury to defend and/or indemnify CALLC and Schlumberger as CALLC's invitee (Count I).[22] Schlumberger also alleged that First Mercury breached SweetH2O's insurance policy with it by disclaiming coverage of Mudra's claims against Schlumberger (Count II)[23] and disclaimed coverage of Mudra's claims in bad faith (Count III)[24]. First Mercury removed the matter to this Court pursuant to this Court's diversity jurisdiction.[25]

---

[18] *Id.* at 9; *see id.* at 11 (discussing Leased and Temporary Workers Injury Exclusion as basis for denial of coverage).
[19] *See id.* at 11.
[20] *Id.*
[21] Compl., Doc. 1-1 ¶ 23.
[22] *Id.* ¶¶ 27-30.
[23] *Id.* ¶¶ 31-40.
[24] *Id.* ¶¶ 41-68.
[25] Notice of Removal, Doc. 1. Schlumberger seeks an amount in excess of $75,000 and is a citizen Oklahoma. *See* Compl., Doc. 1-1 ¶¶ 1, 24. Schlumberger identified First Mercury as a citizen of Illinois and Michigan, *id.* ¶ 2, but First Mercury claims to be a citizen of Delaware and New Jersey, Notice of Removal, Doc. 1 ¶ 6. Either way, diversity jurisdiction is appropriate.

First Mercury now moves to dismiss only Count III for failure to state a claim.[26] Both First Mercury and Schlumberger filed their initial briefs and the time for First Mercury's reply expired. Accordingly, First Mercury's motion is ripe for disposition.

## II.   LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[27] and *Ashcroft v. Iqbal*,[28] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3)

---

[26]   MTD, Doc. 2.
[27]   550 U.S. 544 (2007).
[28]   556 U.S. 662 (2009).
[29]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

"assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[30]

## III. ANALYSIS

First Mercury initially argues that Schlumberger's failure to identify Pennsylvania's bad-faith statute, 42 Pa. C.S. § 8371, is fatal to its claim.[31] As Schlumberger argues, a plaintiff need not identify the statute giving rise to his or her lawsuit if the facts pled in the complaint clearly set out a possible avenue to relief.[32]

To show an insurer acted with bad faith under Pennsylvania law, "a plaintiff must demonstrate, by clear and convincing evidence," the following: (1) "that the insurer did not have a reasonable basis for denying benefits under the policy" and (2) "that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[33] "[P]roof of the insurer's subjective motive of self-interest or ill-will is "probative of the second prong of the above test," but "is not a necessary prerequisite to succeeding in a bad faith claim."[34] However, "proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong."[35]

---

[30] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[31] MTD Br., Doc. 2-1 at 9-10.
[32] *See White v. WMC Mortg. Corp.*, 2001 WL 1175121, at *1 (E.D. Pa. July 31, 2011) (quoting *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)).
[33] *Rancosky v. Washington Natl. Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).
[34] *Id.*
[35] *Id.*

Schlumberger's allegations do not meet that high standard. First, it alleges that First Mercury "disclaimed coverage contrary to the recommendation of the claims specialist who investigated the claim" and then "disclaimed coverage on grounds never raised or examined by its claims specialist."[36] Schlumberger offers no authority that an insurer is limited or bound by the grounds its claims specialist raises. An insurer is entitled to reasonably investigate the underlying facts and such an investigation may alter the basis for its decision on coverage. Changing the basis for denial alone does not constitute bad faith—much less prove it by clear and convincing evidence. That especially true where the final basis asserted by the insurer is meritorious and delivered without unreasonable delay, as is the case here.

Schlumberger next attempts to argue that First Mercury's asserted bases for denial are unfounded. The Court notes that First Mercury's first basis for denial—that SweetH2O's MSA did not directly or indirectly name CALLC—was arguably incorrect,[37] which is perhaps evidenced by First Mercury's provision of a second, "superseding reason" for disclaiming coverage[38]. First Mercury's superseding reason that Mudra's injuries were not caused by SweetH20 also appears to be

---

[36] Compl., Doc. 1-1 ¶ 44, 45. Schlumberger also alleges that First Mercury disclaimed coverage "solely out of a desire to avoid payment and not from any reasoned or considered analysis of the facts and policy language." *Id.* ¶ 44. That allegation is conclusory and therefore entitled to no presumption of truth.

[37] Schlumberger alleges that it provided First Mercery with documentation that CALLC was an affiliate of COI and therefore entitled to coverage. *See id.* ¶ 21; May 15, 2020 Ltr. from Daniel R. Michelmore, Counsel for Schlumberger, to T.J. Miernicki, Claims Specialist, Doc. 1-12 at 3-4.

[38] Compl., Doc. 1-1 ¶ 22.

unfounded. Schlumberger alleges that it provided First Mercury with portions of Mudra's deposition transcript indicating that SweetH20 caused his injuries and the trial record in the Mudra litigation contains evidence that Mudra's injuries were caused by SweetH2O, which it communicated to First Mercury.[39]

However, in the Second Denial Letter—which Schlumberger attached to its Complaint—First Mercury offers an additional basis for denial that Schlumberger does not reference in the Complaint or its brief opposing First Mercury's motion.[40] That basis lies in several policy exclusions laid out in SweetH20's insurance policy with First Mercury. If Mudra was SweetH2O's employee, the Employer's Liability Exclusion applies to his injury.[41] If he was leased to SweetH2O by a staffing company or furnished to SweetH2O to cover for employee absences, skill shortages, or seasonal work, then the Leased and Temporary Workers Injury Exclusion applies to his injury.[42] Therefore, regardless of the exact nature of Mudra's relationship with Sweet H2O, his injuries fall into one of the above exclusions.

---

[39] *Id.* ¶ 24; *see id.* ¶ 21 ("COI also provided First Mercury with relevant portions of Mudra's deposition transcript wherein he testified under oath that prior to the accident "he had expressly warned SweetH2O that the hose was a hazard but that SweetH2O failed to move it or take other safety precautions.").

[40] As Schlumberger attached the Second Denial Letter to its Complaint, the Court may consider it in its analysis of First Mercury's motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." (citing 5A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 299 (2d ed.1990))).

[41] *Id.* at 6-7 (§ 2.e); *see id.* at 11 (discussing Employer's Liability Exclusion as basis for denial of coverage).

[42] *Id.* at 9; *see id.* at 11 (discussing Leased and Temporary Workers Injury Exclusion as basis for denial of coverage).

9

Even assuming that First Mercury's initial basis (CALLC was not COI's affiliate) and its "superseding reason" (SweetH2O did not cause Mudra's injuries) were unfounded and/or frivolous, Schlumberger entirely fails to address—much less dispute—that the Employer's Liability Exclusion and/or Leased and Temporary Workers Injury Exclusion apply to Mudra's injury.

Without more precise facts regarding Mudra's employment relationship with SweetH2O, the Court cannot definitively determine whether he actually is a "temporary" or "leased worker," or an employee of SweetH2O. But based on the facts presented to First Mercury—namely that Mudra was an employee of SweetH2O's subcontractor—the Court can determine that First Mercury's conclusion that Mudra fits into one of those exclusions was not frivolous or unfounded, and therefore does not constitute bad faith. Accordingly, the Court will grant First Mercury's motion but allow Schlumberger to amend its Complaint to add factual allegations to support its bad-faith claims.

## IV. CONCLUSION

For the foregoing reasons, First Mercury's motion to dismiss is granted and Count III of Schlumberger's Complaint is dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
