IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, as assignee of CHESAPEAKE OPERATING, INC., | No. 4:22-CV-01465 |
| | (Chief Judge Brann) |
| Plaintiff, | |
| v. | |
| FIRST MERCURY INSURANCE CO., | |
| Defendant. | |

**MEMORANDUM OPINION**

JUNE 15, 2023

Plaintiff Schlumberger Technology Corporation ("Schlumberger") sues Defendant First Mercury Insurance Co. ("First Mercury") for denying coverage of a personal injury lawsuit filed against Schlumberger. Schlumberger's connection to First Mercury involves a series of contracts between Schlumberger, Chesapeake Appalachia LLC ("CALLC"), Chesapeake Operating Inc. ("COI"), and SweetH20. Schlumberger and SweetH20 were both performing services for CALLC and/or COI during November 2010.

A SweetH20 employee was injured while performing work on COI and CALLC's wellsite. He sued Schlumberger. Schlumberger, through a series of mutual indemnification agreements between it, COI, CALLC, and SweetH20, tendered the employee's claim to SweetH20's insurer, First Mercury. First Mercury denied

coverage. Schlumberger subsequently sued First Mercury, alleging that that First Mercury acted in bad faith when it denied coverage because the terms of SweetH20's insurance policy covered Schlumberger's losses. First Mercury moves to dismiss Schlumberger's bad faith. For the reasons that follow, First Mercury's motion is denied.

## I. BACKGROUND

### A. The Master Service Agreements

COI and CALLC are both wholly owned subsidiaries of the same parent company: Chesapeake Energy Co. ("CEC").[1] In 2007, CALLC entered into a Master Service Agreement with Schlumberger (the "CALLC-Schlumberger MSA").[2] In the CALLC-Schlumberger MSA, CALLC agreed to defend and/or indemnify Schlumberger against claims brought against it by CALLC's invitees, among other parties.[3] In 2008, COI entered into an MSA with SweetH20 (the "COI-SweetH20 MSA").[4] In the COI-SweetH20 MSA, SweetH20 agreed to defend and/or indemnify COI and its present or future affiliates from claims brought against COI and its affiliates by SweetH20, its employees, invitees, subcontractors, and subcontractor's

---

[1] First Amended Compl. ("FAC"), Doc. 15 ¶ 7. For that allegation, Schlumberger cites to CEC's publicly available 10-K annual report. *See id.* CEC's 2019 10-K is available on its website and lists both COI and CALLC as "significant subsidiaries." CEC 2019 10-K at 190, *available at* https://investors.chk.com/sec-filings?year=2019&cat=1.
[2] FAC, Doc. 15 ¶; CALLC-Schlumberger MSA, Doc. 15-1.
[3] FAC, Doc. 15 ¶ 4 (citing CALLC-Schlumberger MSA, Doc. 15-1 § 9.3).
[4] *Id.* ¶ 5; COI-SweetH20 MSA, Doc. 15-2.

employees.[5] SweetH20 also accepted "sole[] responsib[ility] for the safety of its employees, subcontractors, . . . as well as its subcontractor's employees."[6] As required by the COI-SweetH20 MSA, SweetH20 purchased an insurance policy from First Mercury naming COI and any of COI's present or future affiliates as additional insureds.[7]

### B.   The Mudra Injury and Litigation

At some point before November 2010, CALLC requested SweetH20 to perform work at its Troy wellsite.[8] On November 24, 2010, Michael J. Mudra, Sr., an employee of a SweetH20 subcontractor, sustained an injury while working at the Troy wellsite.[9] Mudra subsequently sued Schlumberger for its allegedly negligent placement of hoses he tripped over.[10] Schlumberger denied liability and raised defenses that Mudra was comparatively negligent and/or assumed the risk of being injured because he voluntarily chose to confront an obvious danger.[11]

During Mudra's deposition, he testified that, prior to the accident, he warned SweetH20 that the hoses were a hazard, but SweetH20 did nothing in response.[12] During trial, the testimony showed that Mudra was acting as SweetH20's agent and

---

[5]   FAC, Doc. 15 ¶¶ 5-6 (citing COI-SweetH20 MSA, Doc. 15-2 § 6.2).
[6]   *Id.* ¶ 8 (citing COI-SweetH20 MSA, Doc. 15-2 § 12.1).
[7]   *Id.* ¶¶ 9-10 (citing COI-SweetH20 MSA, Doc. 15-2 § 5(d); First Mercury ACORD Form, Doc. 15-3).
[8]   *Id.* ¶ 13.
[9]   *Id.* ¶¶ 14-15.
[10]  *Id.* ¶ 17 (citing Mudra Compl., Doc. 15-5 ¶¶ 4, 6-7, 10).
[11]  *Id.* ¶ 18 (citing Schlumberger Ans. and New Matter to Mudra Compl., Doc. 15-6).
[12]  *Id.* ¶ 21 (quoting May 15, 2020 Ltr. from Daniel R. Michelmore (Counsel for Schlumberger) to Miernicki (Claims Specialist for First Mercury) ("May 15, 2020 Ltr."), Doc. 15-11).

had warned SweetH20 about the hoses.[13] There was also evidence presented that SweetH20 failed to train Mudra on how and when to stop operations due to safety concerns.[14] In November 2020, a jury returned a verdict in favor of Mudra, finding Mudra forty-five percent (45%) responsible for his own injuries.[15]

### C. The Insurance Dispute

In April 2013, Schlumberger demanded that CALLC defend it in connection Mudra's lawsuit.[16] COI then tendered Schlumberger's demand that CALLC defend Schlumberger to COI's insurer, First Mercury.[17] First Mercury investigated Mudra's claims and ultimately denied COI's tender.[18]

#### 1. Relevant Policy Terms

In the course of its correspondence with Schlumberger, First Mercury excerpted relevant portions of SweetH20's insurance policy. SweetH20's policy defines an additional insured on the policy as any person who SweetH20 agreed to identify as an additional insured and for whom SweetH20 was "performing operations."[19] Such persons were only additional insureds with respect to liability

---

[13]  *Id.* ¶ 27.
[14]  *Id.*
[15]  *Id.* ¶ 26 (citing Mudra Jury Verdict Slip, Doc. 15-13).
[16]  *Id.* ¶ 19 (citing Schlumberger Tender Ltr., Doc. 15-7).
[17]  *Id.* ¶ 20 (citing COI Tender Ltr., Doc. 15-8).
[18]  *Id.* ¶¶ 21-25.
[19]  June 22, 2022 Ltr. from Mark Orlow, Claims Adjuster on behalf of First Mercury to Daniel Michelmore, Counsel for Schlumberger ("June 22, 2022 Denial Ltr."), Doc. 15-12 at 8.

for bodily injuries SweetH20 wholly or partially caused "in the performance of [its] ongoing operations for the additional insured."[20]

Under what the Court terms the "Contractual Liability Exclusion," SweetH20's policy disclaimed coverage of liability SweetH20 contractually assumed unless SweetH20 assumed such liability pursuant to an "insured contract."[21] An "insured contract" is any agreement pertaining to SweetH20's business "under which [SweetH20's] assumes the tort liability of another party" for bodily injuries SweetH20's wholly or partially caused.[22] The policy also contains exclusions for "Leased" and "Temporary" workers, but neither of those exclusions apply if SweetH20 assumes liability for such workers pursuant to an insured contract.[23]

### 2. First Mercury's Basis for Denying Coverage

In its correspondence, First Mercury noted that Schlumberger was "not named as an insured" in SweetH20's policy.[24] It then explained that Schlumberger was "only entitled to additional insured coverage if [SweetH20] was 'performing operations' for Schlumberger and had 'agreed in writing in a contract of agreement that [Schlumberger] would be added as an additional insured'" on SweetH20's

---

[20] *Id.*
[21] *Id.* at 6.
[22] *Id.* at 8.
[23] *Id.* at 9.
[24] Oct. 28, 2015 Ltr. from Miernicki to Leahey, Doc. 15-10 ("Oct. 28, 2015 Denial Ltr.") at 14.

policy.[25] First Mercury claimed that it had not received any evidence of an agreement between Schlumberger or CALLC and SweetH20.[26] Nor had it received sufficient evidence that SweetH20 caused Mudra's injuries.[27] It accordingly denied coverage of Schlumberger's liability from the Mudra lawsuit.

Schlumberger responded that the SweetH20-COI MSA applied to COI's affiliates, which includes CALLC as both CALLC and COI are subsidiaries of the same parent: CEC.[28] Schlumberger cited to *STI Oilfield Services, Inc. v. Access Midstream Partners*, in which the Honorable Robert D. Mariani, writing for this Court, concluded that certain entities were "either subsidiaries or affiliates of [COI]" based on CEC's 10-K.[29] COI also provided to First Mercury "relevant portions of Mudra's deposition transcript . . . wherein he testified under oath that prior to the accident he had expressly warned SweetH20 that the hose was a hazard but that SweetH20 failed to move it or take other safety precautions."[30]

First Mercury again denied coverage. It reiterated its position that neither Schlumberger nor CALLC were named insureds or additional insureds because there was no contract between either Schlumberger or CALLC and SweetH20.[31] It then

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] May 15, 2020 Ltr., Doc. 15-11 at 3-4.
[29] *Id.* (citing 2017 WL 889541, at *5 (M.D. Pa. Mar. 6, 2017) (Mariani, J.)).
[30] *Id.* (internal quotation marks omitted) (citing May 15, 2020 Ltr., Doc. 15-11).
[31] June 22, 2022 Ltr. from Mark Orlow, (First Mercury Claims Manager) to Michelmore ("June 22, 2022 Denial Ltr."), Doc. 15-12 at 8.

explained that even if CALLC was a party to the COI-SweetH20 MSA and SweetH20 was required to name CALLC as an additional insured in its insurance policy, "[t]here were no allegations in the [Mudra lawsuit] and no evidence that [had] been submitted to [First Mercury] to date that indicate[d] that Mudra's injuries were caused . . . by [SweetH20]."[32]

First Mercury also relied on the Contractual Liability Exclusion, explaining that the "indemnification provisions of the [COI-SweetH20 MSA] only constitute an 'insured contract' under [SweetH20's policy] to the extent that injury is caused in whole or in part by [SweetH20]."[33] As First Mercury wasn't provided sufficient evidence indicating that SweetH20 caused Mudra's injuries, it denied coverage.[34] First Mercury continues to deny coverage.[35]

### D. Procedural History

Count III of Schlumberger's First Amended Complaint ("FAC") alleges that First Mercury acted in bad faith when it declined to cover/indemnify Mudra's lawsuit, in violation of 42 Pa. C.S. § 8371.[36] First Mercury moves to dismiss Count III for failure to state a claim.[37] That motion has been fully briefed and is ripe for disposition.

---

[32] *Id.* at 10.
[33] *Id.* at 11.
[34] *Id.* Because First Mercury concluded that there was no insured contract, it also concluded that several exclusions relating to temporary and leased workers applied.
[35] *See id.* ¶¶ 28-29.
[36] *Id.* ¶¶ 44-73.
[37] MTD, Doc. 19.

## II. LAW

Under Rule 12(b)(6) the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[38] and *Ashcroft v. Iqbal*,[39] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[40]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[41]

## III. ANALYSIS

To prevail on its claim for statutory bad faith under 42 Pa. C.S.A. § 8371, a plaintiff must "present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer

---

[38] 550 U.S. 544 (2007).
[39] 556 U.S. 662 (2009).
[40] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[41] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

knew of or recklessly disregarded its lack of a reasonable basis."[42] "[T]he essence of a bad faith claim" is "the unreasonable and intentional (or reckless) denial of benefits."[43] "Claims of bad faith are fact specific and depend on the conduct of the insurer toward its insured."[44] But "an insurer does not act in bad faith by investigating and litigating legitimate issues of coverage."[45]

The dispute underlying Count III is whether SweetH20's insurance policy covers Schlumberger's losses from the Mudra lawsuit. Schlumberger contends that it does, and First Mercury accordingly acted in bad faith by denying coverage. First Mercury argues that the policy doesn't cover those losses and it therefore reasonably denied coverage. Accordingly, the legal sufficiency of Count III depends on whether SweetH20's insurance policy can be reasonably read to cover Schlumberger's losses. If it can, Schlumberger has adequately alleged a section 8371 claim.

SweetH20's policy provides that First Mercury will cover damages the insured is obligated to pay "because of [a] bodily injury" covered by the policy.[46] As noted above, under the Contractual Liability Exclusion, SweetH20's policy doesn't apply to "bodily injur[ies] . . . for which [SweetH20] is obligated to pay damages by

---

[42] *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); *accord Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 543 (3d Cir. 2012).
[43] *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012) (citing *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)).
[44] *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 547 (Pa. Super. Ct. 2020) (citing *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. 2006)).
[45] *Id.* (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 368 (3d Cir. 2004)).
[46] June 22, 2022 Denial Ltr., Doc. 15-12 at 6-7 (internal quotation marks omitted).

reason of the assumption of liability in a contract or agreement."⁴⁷ But the Contractual Liability Exclusion "does not apply to liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract,'" provided the relevant injury occurs after the execution of the "insured contract." ⁴⁸ An "insured contract" is "any part of any agreement pertaining to [SweetH20's] business . . . under which [it] assumes the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization, provided the 'bodily injury' . . . is caused, in whole or in part, by [SweetH20] or those acting on [its] behalf."⁴⁹ "Tort liability," as it is used in the above definition, "means a liability that would be imposed by law in the absence of any contract."⁵⁰

In its denial letters, First Mercury took the position that the COI-SweetH20 MSA is not an insured contract because there was insufficient evidence "indicat[ing] that Mudra's injuries were caused in whole or in part by [SweetH20] or anyone acting on [its] behalf."⁵¹ Based on those letters, First Mercury appears to interpret the definition of "insured contract" as having the following two elements: (1) SweetH20 must contractually assume another party's tort liability for bodily injuries

---

⁴⁷  *Id.* (internal quotation marks omitted). Somewhat circularly, the policy defines a "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Oct. 28, 2015 Denial Letter, Doc. 15-10 at 8. The parties do not appear to dispute that Mudra suffered a "bodily injury" as that term is defined in the policy.
⁴⁸  *Id.*
⁴⁹  *Id.* at 8.
⁵⁰  *Id.*
⁵¹  *Id.* at 11.

and (2) SweetH20 must have caused the particular injury giving rise to the liability SweetH20 assumed under the contract in the first step.[52]

Under First Mercury's interpretation, the first element depends on the terms of the agreement purporting to be an insured contract, but the second depends whether the facts underlying the bodily injury at issue indicate that SweetH20 caused the bodily injury. That explains why First Mercury declined coverage because it hadn't received sufficient evidence that SweetH20 caused Mudra's injury.[53] It's unclear whether Schlumberger agrees with First Mercury's interpretation, but it does assert that it provided sufficient evidence that SweetH20 caused Mudra's injury.[54]

In any event, the Court disagrees with First Mercury's interpretation. The Court views the definition of insured contract to turn solely on the terms of the agreement purporting to be an insured contract—not the facts underlying the claim for which coverage is sought. Accordingly, an agreement is an insured contract if SweetH20 assumes another party's tort liability for bodily injuries that it wholly or partially caused. Any liability that flows from that agreement is excepted from the Contractual Liability Exclusion.

---

[52] *See id.* at 11 ("The indemnification provisions of the [COI-SweetH20 MSA] only constitute an 'insured contract' under [SweetH20's insurance policy] to the extent that injury is caused in whole or in part by [SweetH20].").

[53] *See id.* ("As noted above, there are no allegations in the [Mudra lawsuit] and no evidence that has been submitted to [First Mercury] to date that indicates that Mudra's injuries were caused in whole or in part by [SweetH20] or anyone acting on [its] behalf. Therefore, the [COI-SweetH20 MSA] does not qualify as an 'insured contract.'").

[54] *See* May 15, 2020 Ltr., Doc. 15-11 at 3.

11

The distinction becomes clearer when one compares the policy's definitions of additional insureds and insured contracts. The policy provides that additional insureds only have status as additional insureds "with respect to liability" caused by SweetH20.[55] Therefore, additional insured would only be entitled to coverage "with respect to liability" caused by SweetH20. But the policy does not say that insured contracts are only insured contracts with respect to liability caused by SweetH20. Accordingly, the test is whether the terms of the COI-SweetH20 MSA require SweetH20 to assume the tort liability of third parties to pay for "bodily injuries" it wholly or partially caused—not whether SweetH20 caused Mudra's injury. If the COI-SweetH20 MSA meets that definition, First Mercury is obligated to cover *any* liability SweetH20 assumed pursuant to the COI-SweetH20 MSA regardless of cause, unless some other exclusion applies.[56]

As noted above, the COI-SweetH20 MSA is an agreement between SweetH20, COI, and any affiliates COI named directly or indirectly.[57] Section 6.2

---

[55] *Id.* at 8.

[56] First Mercury also argues that the COI-SweetH20 MSA is not an insured contract because "reimbursement of COI's contractual liability is not a tort liability assumed by SweetH20 but a contractual liability." MTD Br., Doc. 20 at 15. The policy defines tort liability as "liability that would be imposed by law in the absence of any contract." June 22, 2022 Denial Ltr., Doc. 15-12 at 8. First Mercury's argument also misconceives the policy's definition of insured contract. The question is not whether the actual allegations against the insured sound in tort or in contract. It is whether the agreement purporting to be an "insured contract" requires SweetH20 to assume another's tort liability. Section 6.2 of the COI-SweetH20 MSA requires SweetH20 to defend and/or indemnify claims "of every kind and character without limit . . . to the cause or causes thereof," which includes common-law torts. COI-SweetH20 MSA, Doc. 15-2 at 12.

[57] COI-SweetH20 MSA, Doc. 15-2 at 1.

of the COI-SweetH20 MSA requires SweetH20 to indemnify COI and its affiliates' invitees from all claims initiated by employees of SweetH20's subcontractors, "without regard to the cause."[58] Therefore, section 6.2 is an "insured contract" because it requires SweetH20 to assume a third party's liabilities for both injuries it caused and those it didn't cause. That is sufficient to meet the definition of an insured contract even though section 6.2 also obligates SweetH20 to defend claims for injuries it did not cause. Accordingly, neither the Contractual Liability Exclusion nor any of the additional exclusions First Mercury cited to in its denial letters apply to the Mudra lawsuit.[59]

First Mercury argues that the "insured contract" provision only applies to the named insured, citing to *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*[60] In *Jacobs*, our Court of Appeals addressed a situation involving four parties: the owner of an oil refinery, the general contractor that built the refinery, one of the general contractor's subcontractors, and the subcontractor's insurer.[61] The general contractor agreed to indemnify the owner, and the subcontractor agreed to indemnify the general contractor.[62] As required by its subcontract, the subcontractor obtained an

---

[58] May 15, 2020 Ltr., Doc. 15-11 at 12.
[59] June 22, 2022 Denial Ltr., Doc. 15-12 at 6 (providing that the exclusion on contractual liability does not apply to liability assumed pursuant to "insured contracts"), 9 (providing that the exclusions for leased and temporary workers do not apply to liability assumed pursuant to an "insured contract.").
[60] MTD Br., Doc. 20 at 14 (citing 264 F.3d 365 (3d Cir. 2001)).
[61] 264 F.3d at 367.
[62] *Id.*

13

<2025-01-01>

insurance policy with itself as the "named insured" and the general contractor and owner as "additional insureds."[63] The insurance policy at issue in *Jacobs* had an "insured contract" provision that is substantially similar to the provision in SweetH20's policy.[64]

After an explosion occurred at the refinery, various injured individuals, sued the owner, but not the general contractor or subcontractor.[65] The owner sought indemnification from the general contractor.[66] The general contractor subsequently sought indemnification from the subcontractor's insurer with respect to the owner's indemnification claim against the general contractor.[67] The general contractor's basis to seek coverage from the subcontractor's insurer was that the indemnification agreement between the general contractor and the owner was an insured contract under the subcontractor's insurance policy.[68]

The subcontractor's insurance policy expressly explained that when the policy used the words "you and "your," it was referring to the named insured.[69] Because

---

[63] *Id.*
[64] *Compare id.* at 377 ("[The] policy defines '[i]nsured [c]ontract as any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for [injuries] to a third person or organization."), *with* June 22, 2022 Denial Ltr., Doc. 15-12 at 8 (defining "insured contract" as "[t]hat part of any other contract of agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for [injuries] to a third person or organization, provided the [injuries are] caused, in whole or in part, by you or by those acting on your behalf.").
[65] *Jacobs*, 264 F.3d at 367-68.
[66] *See id.* at 368.
[67] *See id.*
[68] *See id.*
[69] *Id.* at 377.

the policy defined "insured contract" as a contract "entered into by *you* and pertaining to *your* business," the district court concluded that the general contractor's indemnification agreement with the owner was not covered by the policy because it was not a contract entered into by the subcontractor, who was the named insured.[70] The Court of Appeals agreed with the district court's interpretation of the policy.[71]

SweetH20's policy uses "you" and "your" to define insured contracts, just as the policy in *Jacobs* did.[72] But unlike the general contractor in *Jacobs*, Schlumberger is not "seeking coverage for its contractual indemnity obligation to [a third party]."[73] Instead, Schlumberger is seeking coverage for its "direct liability" to Mudra.[74] Schlumberger's basis for demanding First Mercury defend it is that the COI-SweetH20 MSA requires SweetH20—the named insured—to defend invitees of COI's affiliates like Schlumberger. Because SweetH20 is both party to the alleged insured contract and the named insured, *Jacobs* is distinguishable.

Accordingly, based on the record before the Court, it concludes that SweetH20's policy covers Schlumberger's losses from the Mudra lawsuit. The FAC therefore plausibly alleges that First Mercury's denial of coverage was unreasonable or reckless, which is sufficient to sustain Count III.[75]

---

[70] *Id.* at 376 (emphasis added).
[71] *Id.* at 377-78.
[72] June 22, 2022 Denial Ltr., Doc. 15-12 at 8
[73] *Jacobs*, 264 F.3d at 376.
[74] *Id.*
[75] *See Condi v. State Farm Ins. Co.*, 2013 WL 4520852, at *3 (M.D. Pa. Aug. 26, 2013) (Munley, J.) (denying motion to dismiss bad-faith claim where alleged loss was covered by policy).

## IV. CONCLUSION

For the foregoing reasons, First Mercury's motion is denied.[76]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[76] In addition, given its denial of First Mercury's motion to dismiss Count III of the FAC, the Court will deny as moot Schlumberger's motion to reconsider the Court's prior Order dismissing Count III of its original complaint. *See* Doc. 17.