IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, as assignee of CHESAPEAKE OPERATING, INC., | No. 4:22-CV-01465 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| FIRST MERCURY INSURANCE CO., | |
| Defendant. | |

**MEMORANDUM OPINION**

**DECEMBER 3, 2025**

## I. BACKGROUND

Plaintiff Schlumberger Technology Corporation ("Plaintiff") sues Defendant First Mercury Insurance Co. ("Defendant") for denying coverage of a personal injury lawsuit filed against Schlumberger.[1] Plaintiff's connection to Defendant involves a series of contracts between Plaintiff, Chesapeake Appalachia LLC ("CALLC"), Chesapeake Operating Inc. ("COI"), and SweetH20.[2] Plaintiff and SweetH20 were both performing services for CALLC and/or COI during November 2010.[3]

---

[1] *See* Doc. 15 (Amend. Compl.).
[2] Doc. 57 (Br. in Supp.) at 1-3; Doc. 61 (Br. in Opp.) at 8.
[3] *Id.*

A SweetH20 employee was injured while performing work on COI and CALLC's wellsite.[4] He sued Plaintiff. Plaintiff, through a series of mutual indemnification agreements between it, COI, CALLC, and SweetH20, tendered the employee's claim to SweetH20's insurer, Defendant.[5] Defendant denied coverage. Plaintiff subsequently sued Defendant, alleging that that Defendant acted in bad faith when it denied coverage because the terms of SweetH20's insurance policy covered Plaintiff's losses.[6]

The claims adjuster who signed and sent the denial of Plaintiff's claim was one Todd Jeffrey Miernicki ("Miernicki").[7] Plaintiff deposed Miernicki, inquiring about the claim denial process and the rationale behind it.[8] During that deposition, Miernicki explained that he did not make the ultimate decision over whether to grant or deny coverage, that instead his job was only to investigate and provide a "pros and cons" type recommendation to the higher placed executives with First Mercury.[9] Above Miernicki in the chain of command was his supervisor Mary Coffey ("Coffey"), in-house counsel Stan Greenspan ("Greenspan"), and outside counsel

---

[4]  *Id.*
[5]  *Id.*
[6]  Doc. 15.
[7]  Doc. 61-12 (Exhibit 11); Doc. 54-5 (Miernicki Tr.) 5:6.
[8]  Doc. 54-5.
[9]  *Id.* at 27:19-20; 35:12-14.

Kristin Gallagher ("Gallagher").[10] It was Gallagher who drafted the denial letter itself; Miernicki's signature was merely an addition.[11]

Now, Plaintiff seeks to compel Defendant to produce documents and communication involving Greenspan and Gallagher's work in the claims denial process.[12] Plaintiff believes these documents and communications to be integral to Plaintiff's bad faith claim.[13] Defendant asserts that the communications are barred by attorney-client privilege and the documents by work product doctrine.[14]

Plaintiff seeks specifically to 1) compel production of documents involving Greenspan and Gallagher's work related to claim denial that Defendant has withheld or redacted; 2) compel the deposition of Greenspan and Gallagher about their roles in the claim denial process; and 3) bar Gallagher and her firm Kennedys CMK LLP ("Kennedys CMK") from representing Defendant.

## II.  LAW

### A.  Standard of Review

"Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process."[15] "Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be

---

[10] *Id.* at 19:17-14; 21:14-19; 89:19-25.
[11] *Id.* at 85:16-21; 86:11-13.
[12] Doc. 57 at 6-8.
[13] *Id.* at 8.
[14] Doc. 61 at 6.
[15] *Schiavone v. Luzerne Cty.*, 343 F.R.D. 34, 37 (M.D. Pa. 2023) (Mehalchick, C.M.J.) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987)).

compelled under Rule 37 is defined, in turn, by"[16] by Federal Rule of Civil Procedure 26, which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[17]

"The party seeking the discovery has the burden of clearly showing the relevancy of the information sought."[18] "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1) or (ii) is not sufficiently relevant to justify the burden of producing the information."[19]

In Pennsylvania, the attorney-client privilege is "a statutory right afforded to clients in civil cases."[20] "Its purpose is to protect communications between a client and the client's legal counsel so that information can be conveyed freely during the

---

[16] *Schiavone*, 343 F.R.D. at 37 (quoting *Brewer v. Berks Cty. Sheriff*, No. 13-5763, 2015 U.S. Dist. LEXIS 193191, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015)).
[17] FED. R. CIV. P. 26.
[18] *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).
[19] *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019).
[20] *King v. Kappa Sigma Fraternity*, 331 A.3d 695, 701 (Pa. Super. Ct. 2025).

preparation of a legal matter."[21] When the client is a corporate entity, "the privilege extends to 'communications between [the entity's] attorneys and agents or employees authorized to act' on the entity's behalf."[22] The Pennsylvania Superior Court has identified the following elements for the privilege to apply: (1) "The asserted holder of the privilege is or sought to become a client; (2) [t]he person to whom the communication was made is a member of the bar of a court or his subordinate; (3) [t]he communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and (4) [t]he privilege has been claimed and is not waived by the client."[23]

"[T]he party asserting the attorney-client privilege has the initial burden of showing that the privilege has been properly invoked."[24] "If the trial court finds that the proponent of the privilege has set forth facts which make it applicable, then the burden shifts to the party seeking disclosure of the communication to produce facts which would make it discoverable."[25]

---

[21] *Id.*
[22] *Id.* (quoting *BouSamra v. Excela Health*, 210 A.3d 967, 983 (Pa. 2019)).
[23] *Id.* at 701-702 (citing *Ford-Bey v. Pro. Anesthesia Servs. of N. Am., LLC*, 229 A.3d 984, 990-91 (Pa. Super. 2020)).
[24] *Id.*
[25] *Id.*

5

The work product doctrine similarly provides that materials "prepared in anticipation of litigation or for trial by or for another party or its representative" are not "[o]rdinarily" discoverable.[26] "The purpose of the work-product doctrine differs from that of the attorney-client privilege."[27] "Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients."[28] "Under either Rule 26 or [*Hickman v. Taylor*], the party invoking the work product doctrine has the burden of proving it applies."[29] "Once that burden has been met, protected work prepared in anticipation of litigation must be produced only under very limited circumstances and opinion work product is 'afforded near absolute protection from discovery.'"[30]

But "[t]he question [of] whether a document was prepared in anticipation of litigation is often a difficult factual matter."[31] The United States Court of Appeals for the "Third Circuit has stated that a document is created in anticipation of litigation when, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained

---

[26] FED. R. CIV. P. 26(b)(3)(A).
[27] *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427-28 (3d Cir. 1991).
[28] *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393-94, 91 L.Ed. 451 (1947) and *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).
[29] *EFG BNK AG v. Lincoln National Life Ins. Co.*, 593 F. Supp. 3d 225, 229 (E.D. Pa. 2022) (citing *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 277 (W.D. Pa. 2014)).
[30] *Serrano*, 298 F.R.D. at 277 (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)).
[31] *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990).

because of the prospect of litigation.'"[32] "In applying this test, courts must look to 'the state of mind of the party preparing the document or . . . the party ordering preparation of the document.'"[33] "This inquiry is limited by the requirement that the party's anticipation of litigation be objectively reasonable."[34]

The attorney-client privilege doctrine does not cover business advice, nor legal advice only incidental to business advice.[35] "The privilege does not exist just because one party to the communication has the title of 'attorney.'"[36] Instead, to be privileged, the individual must be acting as "an advisor, i.e., presenting opinions and setting forth defense tactics as to the procedures to be utilized for an effective defense."[37] "The privilege simply does not attach to a discussion of the facts, no matter how extensive or involved the discussion may become."[38] Similarly, the work product doctrine does not apply to documents created by a licensed attorney when those documents are created in the routine course of business.[39]

---

[32] *Sullivan v. Warminister Tp.*, 274 F.R.D. 147, 152 (E.D. Pa. 2011) (quoting *Rockwell Int'l*, 897 F.2d at 1266).
[33] *Id.* (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993)).
[34] *Id.*
[35] *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 78 n.8 (2011) ("[T]he privilege does not extend to business advice or protect clients from factual investigations."); *Pace-O-Matic, Inc. v. Eckert*, No. 20-CV-292, 2024 U.S. Dist. LEXIS 77113, at *17 (M.D. Pa. Apr. 29, 2024).
[36] *United States Fidelity & Guar. Co. v. Barron Indus.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992).
[37] *Id.*
[38] *Id.*
[39] *See Atiyeh v. Liberty Mut. Ins. Co.*, No. 00-2661, 2000 U.S. Dist. LEXIS 17607, at *1-2 (E.D. Pa. Nov. 15, 2000).

## B.   Analysis

Preliminarily, the Court sees the relevance of the information sought; for a bad faith claim, evidence of Defendant's rationale for denying Plaintiff's claim is important for determining liability.[40] Accordingly, the burden shifts to Defendant to prove that the information requested is covered by the attorney-client privilege or work product doctrine. Defendant has not met this burden.

In the insurance context, where the lines between what is legal and what is factual can blur, courts have repeatedly emphasized that "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate, and make a decision with respect to claims made . . . by its insureds."[41] However, there is a point where "an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation."[42]

---

[40] *See also Keefer v. Erie Ins. Exchange*, 2014 U.S. Dist. LEXIS 29282, No. 1:13–CV–1938, at *5 (M.D. Pa. Mar. 7, 2014) ("Given the liberal scope of federal discovery and the fact that the reason for non-payment may be probative of whether Defendant acted in bad faith in the investigation of Plaintiff's UIM claim, Defendant's objection to this area of inquiry will be overruled.").

[41] *See, e.g., Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-01837, 2014 U.S. Dist. LEXIS 30436, at *2 (M.D. Pa. Mar. 10, 2024) (internal quotation omitted); *Barnard v. Liberty Mut. Ins. Corp.*, No. 3:18-CV-01218, 2019 U.S. Dist. LEXIS 18660, at * (M.D. Pa. Feb 6, 2019); *see also Solo-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. 19-4016, 2021 U.S. Dist. LEXIS 11738, at *18 (E.D. Pa. Jan 22, 2021) (stating that an insurer "is not permitted to shield the discovery of its entire claims handling and investigation under the attorney-client privilege and work-product doctrine by hiring an attorney to perform its services.").

[42] *Solo-Sanchez*, 2021 U.S. Dist. LEXIS 11738, at *20.

The challenging question here is determining at what point Greenspan and Gallagher's work crossed the threshold from routine insurance adjustment, a business transaction not protected by the privileges, to legal analysis and preparation of litigation, i.e. protected activity.[43] Defendant has not met its burden to show that, at all relevant times, Greenspan and Gallagher were acting in an advisory, legal capacity rather than in the course of claims adjusting business. On the contrary, after a detailed review of Miernicki's testimony, it is clear that Greenspan and Gallagher were integral to Plaintiff's claim denial.[44] To the extent that these attorneys served "a dual role in representing Defendant, the attorney-client privilege would extend to communications prepared while they acted as legal counsel," but not to their work in processing and denying Plaintiff's claim.[45]

---

[43] This difficulty is compounded by the Court not having access to any documents or evidence from Defendant to determine what type of work Greenspan and Gallagher were doing if not routine claims adjustment.

[44] *See* Doc. 54-5 (Tr. Miernicki). Miernicki described the denial as being a group decision made by himself, his supervisor Coffey, Greenspan, and Gallagher. *Id.* at 34:2-13. Gallagher and Greenspan provided Miernicki the "substance of the reasons for denial of coverage." *Id.* at 35:12-14. Miernicki made it clear that he was not the one with final decision-making power: he testified that there was never a time that the coverage determination was his responsibility. *Id.* at 78:7-11. Indeed, Gallagher drafted the coverage opinion itself; Miernicki's signature was but an addition. *Id.* at 85:16-21; 86:11-13. *See also id.* at 88:22-89:1 ("[Q:] If I wanted to know the rationale behind the denial based on the additional insured endorsement, who would I need to ask that question to? A: Stan Greenspan. Q: Anyone else that could answer that question? [A:] I guess [Gallagher].").

Defendant claims that Miernicki misremembered the events in question, but provides no factual support for this claim. Doc. 61 at 15. Defendant's word, without more, does not prevail over the clear testimony provided in Miernicki's deposition to the contrary.

[45] *Pengate Handling Sys. v. Westchester Surplus Lines Ins. Co.*, No. 1:06-CV-0993, 2007 U.S. Dist. LEXIS 13303, at *13 (M.D. Pa. Feb. 27, 2007).

Similarly, Defendant has not met its burden to show that the documents were prepared in anticipation of litigation rather than as part of the routine claim denial process. That Plaintiff had raised the possibility of litigation, and perhaps even initiated it, before or while the documents at issue were created, does not alone render them protected work product.[46] Instead, the documents must be prepared for, or in anticipation of, the litigation.[47] The only evidence before the Court now, Miernicki's testimony, indicates that the documents sought were created during and to assist with the denial of Plaintiff's claim, not for legal advice related to Plaintiff's threatened litigation.[48]

---

In *Pengate*, a case quite factually similar to this one, the court drew the line of privilege by referencing the date of Plaintiff's claim denial; documents or communications prepared after the claim was decided would be reviewed *in camera*. *Id.* at *13-14. Given that Plaintiff did raise the possibility of litigation before his claim was decided, it is likely that some purely legal statements or communications were made before the date of claim denial. Doc. 61 at 4. Additionally, it is likely that some statements about the denial from a purely business lens were made after Plaintiff was notified. Therefore, while the date of Plaintiff's denial should guide parties, it is not dispositive.

[46] *See Highland Tank & Mfg. Co. v. PS Intern.*, 246 F.R.D. 239, 246 (W.D. Pa. 2007) ("[T]he work product doctrine only protects documents prepared in anticipation of litigation, not in the regular course of business."); *Am. Home Assur. Co. v. United States*, No. 09-CV-258, 2009 U.S. Dist. LEXIS 93597, at *6 (D.N.J. Oct. 7, 2009).

[47] *Id.*; *Sullivan*, 274 F.R.D. at 152.

[48] *See supra* note 44, Doc. 54-5. However, the Court is limited by not having access to the actual documents withheld by Defendant as privileged, and leaves room for the possibility that there are documents or communications with counsel that were made about Plaintiff's litigation rather than in the course of insurance adjustment. Any such documents or communications would be covered by the work product doctrine.

Plaintiff is entitled to discover First Mercury's underlying rationale for denying the claim.[49] Accordingly, Plaintiff may discover facts, documents, and communications relevant to Greenspan and Gallagher's roles in denying the claim.

Plaintiff's motion to compel is therefore granted. Documents created and/or used by the Miernicki, Gallagher, and Greenspan cohort in denying Plaintiff's claims are relevant and discoverable. Defendant is compelled to produce copies of its communications with in-house and outside coverage counsel that were created during the coverage decision-making process, specifically discuss that process, or are relevant to that process.[50] Moreover, Plaintiff may depose Greenspan and Gallagher about facts relevant to their role in the coverage decision-making process. These depositions shall be completed by January 10, 2026. Plaintiff may not, of course, inquire into purely legal matters, such as Defendant's response to Plaintiff's threatened litigation.[51]

---

[49] This is especially so where Plaintiff, as here, brings a bad faith claim that brings into contention Defendant's rationale for denying coverage. It is true that "a mere claim of bad faith is not enough to shatter the work-product privilege," but, here, Defendant's submissions to Plaintiff are insufficient to depict the internal claim denial process. *See Solano-Sanchez*, 2021 U.S. Dist. LEXIS 11738, at *19-20 (internal quotation omitted).

[50] The Court trusts the parties to interpret this order and to disclose any such documents falling within its scope. However, to the extent that there is dispute about communications or parts of communications, Defendant may provide such documents to the court for in camera review. However, "in the interest of efficiency and conservation of valuable judicial resources, the [C]ourt strongly encourages Defendant to conduct a thorough review of its documents before submitting them to the court, and submit only those documents that it truly believes fall into a legal or mixed category so as to implicate the attorney-client privilege in light of the court's reasoning here." *Pengate*, 2007 U.S. Dist. LEXIS 13303, at *14.

[51] If an *in camera* review of documents should prove necessary, the parties are encouraged to schedule the depositions for after any review to allow the Court to further clarify the scope of this order.

### C.     Motion to Disqualify Counsel

Plaintiff additionally seeks to disqualify Gallagher, and her firm Kennedys CMK, from continuing to represent Defendant under Pennsylvania Rule of Professional Conduct 3.7.[52] Defendant responds that Rule 3.7 only bars representation at trial, and even then does not bar the entire firm.[53]

Defendant has the better argument here: Rule 3.7 only bars representation of an advocate-witness at trial.[54] Accordingly, the Court declines to disqualify Gallagher from continuing representation of Defendant at this stage.[55] Similarly, Kennedys CMK as a firm may continue to represent Defendant. As trial approaches, and after discovery is fully completed, the Court will be in a better place to assess any potential prejudice arising from Kennedys CMK representing Defendant at trial.[56] Accordingly, Plaintiff's motion to disqualify counsel will be denied without prejudice to Plaintiff's right to file another motion to disqualify closer to the time of trial.

---

[52]  Doc. 57 at 10; PA. R. PROF. COND. 3.7, Lawyer as Witness.
[53]  Doc. 61 at 18-19.
[54]  *See, e.g., Foster v. JLG Indus.*, 372 F. Supp. 2d 792, 798-99 (M.D. Pa. 2005) (overruled in part on other grounds); *George v. Wausau Ins. Co.*, No. CIV. A. 99-6130, 2000 WL 276915, at *2 (E.D. Pa. 2000); *Heist v. Henny Penny Farms, Inc.*, 23 Pa. D. & C. 5th 508, 514-15 (Pa. Com. Pl. 2011). The Court additionally notes that parties have an independent obligation to ensure there are no conflicts of interest. *United States v. Fassett*, 185 F. Supp. 3d 507, 512 (M.D. Pa. 2015) ("'Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved.'") (quoting the comments to Rule 3.7).
[55]  *Evans v. Chichester Sch. Dist.*, 533 F. Supp. 2d 523, 539-40 (E.D. Pa. 2008) (delaying the determination of disqualification until closer to the trial date).
[56]  For instance, should Gallagher and the Kennedys prove to be heavily involved in the factual disputes, the potential for prejudice and conflicts is much higher.

## II.  CONCLUSION

Plaintiff's motion to compel is granted. Plaintiff may discover documents involving Greenspan and Gallagher's work related to Plaintiff's claim's denial and depose Greenspan and Gallagher about their roles in that process. These depositions shall be completed by January 10, 2026. Plaintiff's motion to disqualify counsel is denied without prejudice. Kristin Gallagher and Kennedys CMK may continue to represent Defendant at this time.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge