**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, as assignee of CHESAPEAKE OPERATING, INC., | No. 4:22-CV-01465 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| FIRST MERCURY INSURANCE CO., | |
| Defendant. | |

**MEMORANDUM OPINION**

**MARCH 31, 2026**

## I.   BACKGROUND

Plaintiff Schlumberger Technology Corporation ("Plaintiff") sued Defendant First Mercury Insurance Company ("Defendant") in a variety of counts stemming from Defendant's denial of insurance coverage.[1] Chief among them, for purposes of the instant motion, is a bad faith denial claim.[2] Plaintiff moved to compel production of various documents related to the claim denial process, and Defendant has moved twice for *in camera* review. The Court granted the second motion.[3] The requested *in camera* review is now complete; for the reasons stated below, Plaintiff will be entitled to discover some documents while others will remain redacted as privileged.

---

[1]   Doc. 15
[2]   *Id.* at Count III.
[3]   Doc. 80.

### A.    Factual Background

A worker allegedly fell on a natural gas well site and sustained injury, subsequently filing a personal injury lawsuit against Plaintiff which eventually resulted in a $1.7 million dollar verdict against Plaintiff in November 2020.[4] Through a lengthy and intricate series of indemnification agreements and assignments between Plaintiff, third-party companies, and Defendant, Plaintiff tendered an insurance claim to Defendant for the damages incurred.[5] Specifically, Plaintiff or its underlying companies[6] tendered an indemnification claim to Defendant on August 4, 2015.[7]

On September 14, 2015, Defendant issued a reservation of rights letter, sent by claims adjuster Todd Jeffrey Miernicki ("Miernicki") who was assigned to the case.[8] On September 26, 2015, Plaintiff's counsel emailed back with additional information about the claim and stated that, should Defendant deny the tender, Plaintiff would file a declaratory judgment and/or bad faith complaint in federal court.[9] On October 9, 2015, Plaintiff's counsel sent an email to Defendant, informing Defendant that they would file the attached complaint in court unless Defendant

---

[4]    Doc. 15 (Amend. Compl.) at ¶ 26.
[5]    Doc. 15 (Amend. Compl.) at ¶¶ 19-20.
[6]    Plaintiff Schlumberger is the assignee of Chesapeake Operating, LLC ("COI"); the distinction is not relevant to the purposes of the instant motion, and therefore the Court refers to both as "Plaintiff."
[7]    Doc. 61-2 (Exhibit 1).
[8]    Doc. 61-3 (Exhibit 2).
[9]    Doc. 61-4 (Exhibit 3).

accepted the tender.[10] Defendant denied the claim on October 28, 2015.[11] Plaintiff

subsequently filed this suit in May 2017.[12] In May 2020, Plaintiff again requested

that Defendant accept their insurance tender, and, after reopening the claim,[13]

Defendant denied the request again on June 22, 2020.[14]

Defendant's process of denying Plaintiff's claim remains nebulous at best.

However, in opposition to the original motion to compel ("Motion I"), Plaintiff

submitted the deposition of the claims adjuster who handled the case, Todd Jeffrey

Miernicki ("Miernicki"), which the Court reviewed in detail.[15] Miernicki explained

that the insurance adjustment process was a group decision made by himself, his

supervisor, and two attorneys, in-house counsel Stan Greenspan ("Greenspan") and

outside counsel Kristin Gallagher ("Gallagher").[16]

---

[10]  Doc. 61-5 (Exhibit 4).
[11]  Doc. 15 at ¶ 22.
[12]  Doc. 15-14 at ¶ 1 n.1.
[13]  *See* FMIC00013 ("Subject: FW: REOPEN- CLOSED MATTER").
[14]  Doc. 15 ¶¶ 23-24.
[15]  Doc. 68 at 9 n.44.
[16]  *See* Doc. 54-5 (Tr. Miernicki). Miernicki described the denial as being a group decision made by himself, his supervisor Coffey, Greenspan, and Gallagher. *Id.* at 34:2-13. Gallagher and Greenspan provided Miernicki the "substance of the reasons for denial of coverage." *Id.* at 35:12-14. Miernicki made it clear that he was not the one with final decision-making power: he testified that there was never a time that the coverage determination was his responsibility. *Id.* at 78:7-11. Indeed, Gallagher drafted the coverage opinion itself; Miernicki's signature was but an addition. *Id.* at 85:16-21; 86:11-13. See also *id.* at 88:22-89:1 ("[Q:] If I wanted to know the rationale behind the denial based on the additional insured endorsement, who would I need to ask that question to? A: Stan Greenspan. Q: Anyone else that could answer that question? [A:] I guess [Gallagher].").

### B.    Procedural History of the Discovery Motions

### 1.    Motion I - Plaintiff's Motion to Compel

On June 11, 2025, Plaintiff filed a Motion to Compel Defendant ("Motion I") to produce a variety of documents regarding the denial of Plaintiff's insurance claim and to allow depositions of witnesses related to the same subject matter.[17] Defendant argued that such information was covered by attorney client privilege and work product doctrine.[18]

Upon review of the submitted information and the applicable law, the Court ordered that Plaintiff was entitled to discover "facts, documents, and communications" related to Defendant's denial of the insurance claim.[19] As Plaintiff brought a bad faith claim, the decision-making process regarding Plaintiff's insurance claim is discoverable. The Court explained that, "[t]o the extent that [Defendant's] attorneys served 'a dual role in representing Defendant, the attorney-client privilege would extend to communications prepared while they acted as legal counsel,' but not to their work in processing and denying Plaintiff's claim.'"[20] Additionally, the Court clarified that the fact that attorneys were involved with the claim denial process did not automatically render documents created by them

---

[17]    Doc. 54 (Mot.).

[18]    Doc. 61 (Br. in Opp.) at 7-10.

[19]    Doc. 68 (Memo.) at 11; Doc. 69 (Ord.). The Court's rationale is set out in full in its prior Memorandum Opinion, and the Court will only briefly summarize the instructions important for the instant motion. Doc. 68.

[20]    Doc. 68 at 9 (quoting *Pengate Handling Sys. v. Westchester Surplus Lines Ins. Co.*, No. 1:06-CV-0993, 2007 WL 9821901, at *5 (M.D. Pa. Feb. 27, 2007)).

privileged or work product, nor did the mere fact that Plaintiff had raised the possibility of litigation.[21]

The Court compelled Defendant to "produce copies of its communications with in-house and outside coverage counsel that were created during the coverage decision-making process, specifically discuss that process, or are relevant to that process."[22] The Court instructed the parties that, after a "thorough review" of documents in light of the Court's Memorandum Opinion, Defendant would be allowed to submit "only those documents that it truly believe[d] fall into a legal or mixed category" for an *in camera* review.[23]

### 2.    Motion II - Defendant's Motion for *In Camera* Review

Just over two weeks after the Court's first Memorandum Opinion on this issue, Defendant filed another Motion for *in camera* review of documents ("Motion II").[24] To the Court's astonishment, Defendant had not turned over *any* documents in light of the Court's first Memorandum Opinion and Order, instead submitting all of the same, previously disputed documents to the Court to review.[25]

In its brief in support, Defendant again argued that all the withheld documents were protected by the attorney client privilege or work product doctrine, providing

---

[21]    Doc. 68 at 9-10.
[22]    Doc. 68 at 11.
[23]    Doc. 68 at 11 n.50.
[24]    Doc. 70 (Mot.).
[25]    Doc. 70 (Mot.); Doc. 71 at 6 ("[Defendant] submits to the Court that it has already produced all relevant, non-privileged documents that fall within this description.").

practically identical arguments as those it had just made in opposition to Motion I.[26] Defendant made no substantive effort to engage with the Court's guidance when again arguing that every document was protected.[27] To the Court's dismay, it appeared that Defendant had either not grasped or entirely disregarded most of the guidance the Court had directed in its first Memorandum Opinion.[28]

The Court denied Motion II, instructing Defendant to make a good-faith effort to apply the Court's previous Order.[29] The Court encouraged redactions as opposed to wholescale withholding of documents.[30] Additionally, the Court clarified again that "Defendant [must] produce specific documents or parts of documents related to the insurance adjusting process, given that '[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation

---

[26] Large sections of Defendant's briefing regarding Motion II are redundant from their original brief with seemingly no attempt to apply the Court's guidance from the first Memorandum Opinion. *See, e.g.,* Doc. 61 (Br. in Opp. to Motion I) at 3-5; Doc. 71 at 2-5; Doc. 61 at 9-11; Doc. 71 at 7-8.

[27] For instance, Defendant argued that "[t]here can be no credible dispute by Plaintiff that communications and documents between a party and its counsel in the course of active litigation are protected from disclosure." Doc. 71 at 10. The Court's first Memorandum Opinion had made clear that this issue was indeed credibly disputed, and that not all documents between a party and its counsel are protected, even when litigation was pending.

[28] Doc. 73 (Memo. and Ord.) at n.5 ("Defendant seemingly has not even attempted to apply the guidance from the Court's Memorandum Opinion, see Doc. 71 at 7, 8, 9, 10, as Defendant's brief amazingly regurgitates the same arguments previously analyzed and addressed at length by this Court.").

[29] Doc. 73 (Memo. and Ord.).

[30] Doc. 73 at 3.

of litigation when it has a duty to investigate, evaluate, and make a decision with respect to claims made . . . by its insureds.'"[31]

### 3. Motion III - Defendant's Second Motion for *In Camera* Review

Defendant then produced some of the disputed documents, several of which were heavily or entirely redacted.[32] Defendant moved again for an *in camera* review of the remaining documents ("Motion III"). The Court granted Motion III.

Of the several documents withheld by Defendant, Plaintiff focuses on two:[33] FMIC02393, which consists of claims adjuster Miernicki's "initial thoughts" regarding the coverage decision, and FMIC02448-2464, which is a draft coverage position letter. The redacted version of FMIC02448-2464 contains wall-to-wall black ink, wholly redacting the entire document.[34]

## II. DISCUSSION

### A. Scope of Privilege

A lengthier discussion of the attorney-client privilege and work product doctrine is set out in the Court's first Memorandum Opinion on this issue, Doc. 68,

---

[31] Doc. 73 at 1-2 (quoting Doc. 68 (Memo. I) and *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-01837, 2014 WL 931101, at *2 (M.D. Pa. Mar. 10, 2024)).

[32] Doc. 83 (*in camera* documents).

[33] Doc. 79 at 3-4.

[34] Doc. 83. Defendant should be aware that the Court strongly considered imposing the sanction of waiver of attorney-client privilege, given Defendant's repeated efforts to subvert and relitigate the Court's prior two orders explaining that materials related to the denial of Plaintiff's claim are discoverable, specifically Defendant's failure to disclose FMIC02393 and FMIC02448-02646. However, Defendant is warned that the Court will not tolerate further attempts to delay and obfuscate this litigation. This singular discovery dispute has taken almost an entire year; the original letter explaining the dispute was filed on May 14, 2025.

and will not be repeated in full here.[35] The Court will briefly restate the scope of such privileges in the context of a bad-faith insurance claim dispute.

The attorney-client privilege protects communications made between a client and an attorney in confidence for the purpose of obtaining or providing legal assistance.[36] The attorney-client privilege does not cover business advice, nor does it exist merely because one party is an attorney.[37] The work product doctrine is similar, but protects materials "prepared in anticipation of litigation or for trial by or for another party or its representative."[38] A factual issue, the work product doctrine protects documents that have been prepared or obtained because of the prospect of litigation.[39] Additionally, even if a plaintiff raises the possibility of litigation, and perhaps even initiated it, before or while the documents at issue were created, that fact alone does not render the document protected work product.[40] Moreover, the party claiming privilege bears the burden of establishing it.[41]

---

[35]    Doc. 68 at 3-7, 8-11.

[36]    *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007).

[37]    *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 78 n.8 (2011); *United States Fidelity & Guar. Co. v. Barron Indus.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992).

[38]    FED. R. CIV. 26(b)(3)(A).

[39]    *U.S. v. Rockwell Intern.*, 897 F.2d 1255, 1266 (3d Cir. 1990).

[40]    *Leach v. Quality Health Servs.*, 162 F.R.D. 499, 502 (E.D. Pa. 1995) (citing *Raso v. CMC Equip. Rental*, 154 F.R.D. 126, 128 (E.D. Pa. 1994)). *See also* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2024 (1994) ("[E]ven though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.").

[41]    *United States v. Voigt*, 89 F.3d 1050, 1067 n. 6 (3d Cir. 1996).

The work product doctrine is not automatically inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer.[42] In determining whether documents in an insurer's claim file were prepared in anticipation of litigation or if they fall within the routine practice of investigating claims, courts consider whether the documents were created for the purpose of making a coverage decision or for the prospect of litigation, and when the documents were created relative to the claim decision date.[43]

A bad faith insurance claim requires a showing that "the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim."[44] Regarding the aforementioned privileges, as attorneys are frequently involved in the process of advising on claims adjustment, "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims

---

[42]   *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).

[43]   *Grimsley v. Manitowoc Co. Inc.*, No. 1:15-CV-1275, 2017 WL 2985119, at *10 (M.D. Pa. July 13, 2017) (collecting similar cases); *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-01837, 2014 WL 931101, at *3-4 (M.D. Pa. Mar. 10, 2024); *Barnard v. Liberty Mut. Ins. Corp.*, No. 3:18-CV-01218, 2019 WL 461510, at *3-4, 5-7 (M.D. Pa. Feb 6, 2019); *see also Keefer v. Erie Ins. Exchange*, 2014 WL 901123, No. 1:13–CV–1938, at *5 (M.D. Pa. Mar. 7, 2014); *Solo-Sanchez v. State Farm Mut. Auto Ins. Co.,* No. 19-4016, 2021 WL 229400, at *7-8 (E.D. Pa. Jan 22, 2021); *Legends Mgmt. Co. v. Affiliated Ins. Co.*, No. 2:16-CV-01608, 2017 WL 4227930, at *6 (D.N.J. Sept. 22, 2017) (collecting cases).

[44]   *Wolfe v. Allstate Property & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015). As the Court has already held, Plaintiff adequately pled a bad faith claim sufficient to survive Defendant's motion to dismiss. Docs. 25, 26, 30.

made on it by its insureds."[45] Accordingly, as I held previously, when attorneys serve "'a dual role in representing Defendant, the attorney-client privilege would only extend to communications prepared while they acted as legal counsel,' but not to their work in processing and denying Plaintiff's claim."[46] Because Plaintiff commenced litigation before Defendant issued its claim denial, the dates of litigation commencement and claim denial are relevant but not dispositive to the decision of privilege applicability.[47]

## B.   Analysis

Defendant submits several documents to the Court either partially or fully redacted for *in camera* review.[48] Having laid out the applicable framework for this analysis, the Court addresses each series of documents in batches.

### 1.   FMIC00003-00004, FMIC00006-00007, and FMIC00009

Plaintiff has redacted information on FMIC00003-00004, FMIC00006-00007, and FMIC00009. The redactions contained in these documents, created far after the coverage decision processes had concluded, are all properly redacted as work product and attorney-client privilege.[49]

---

[45]   *See, e.g., Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 931101, at \*2; *see also Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. 19-4016, 2021 WL 229400, at \*7-8 (E.D. Pa. Jan. 22, 2021).

[46]   Doc. 68 at 9 (quoting *Pengate Handling Sys. v. Westchester Surplus Lines Ins. Co.*, No. 1:06-CV-0993, 2007 WL 9821901, at \*5 (M.D. Pa. Feb. 27, 2007)).

[47]   Doc. 68 at 10 n.45.

[48]   Doc. 83.

[49]   The Court notes that the "redacted" versions Defendant submitted of FMIC00006-00007 do not contain any redactions. Given that some of the email chains in FMIC00006-00007 are

10

### 2.    FMIC00011-00017

Plaintiff has also redacted information on documents FMIC00011-00017.[50]

FMIC00011 contains two redactions. Both are properly redacted, relating to anticipated litigation rather than claim denial process.

FMIC00012 contains four[51] redactions. The third redaction is improper, as it relates to the claim denial decision-making process and bad faith claim rather than the anticipated subsequent litigation.[52] Accordingly, Defendant must disclose that redaction.[53] The first, second, and fourth redactions are proper.

FMIC00013 contains three redactions. The first redaction is proper in part and improper in part. The first half of the sentence starting with "please" and ending with "finalize" is improperly redacted and must be disclosed as it relates to the claim

---

redundant to those contained in FMIC00003-00004, the Court presumes the lack of redactions was unintentional. To the extent that such documents have not been disclosed to Plaintiff, Defendant may redact the substance of the emails contained in FMIC00006-00007.

[50]  In brief, Defendant argues that the redactions in these documents are proper given that the attorney-client privilege protects communications by or to attorneys analyzing potential liability for subsequent claims. Doc. 77 at 12-13. The Court indeed allows redactions of truly containing such communications, but the privilege does not extend to communications made by lawyers who are actually completing the process of claims adjusting, a business practice. The line is subtle, but important. *See Formosa Plastics Corp., U.S.A. v. Ace American Ins. Co.*, No. 20-14338, 2023 WL 8446228, at *6 (D.N.J June 8, 2023) ("[T]o the extent attorneys are engaged in the equivalent of adjustment of an insurance claim, they are not providing privileged legal advice, but are engaged in the business of insurance.") (Allen, M.J.) *aff'd* 2023 WL 663385.

[51]  The Court groups the redactions by sentence / paragraph for this document.

[52]  While after the initial denial, Defendant had reopened the claim process and reaffirmed its denial on June 22, 2020. *See* FMIC00013 ("Subject: FW: REOPEN- CLOSED MATTER"). Additionally, as the end of the email makes clear, this communication was created in the process of finalizing the denial. *See* FMIC00013. Accordingly, this is still relevant to Defendant's ultimate denials of Plaintiff's claim and the bad faith at issue in this case.

[53]  Specifically, Defendant must disclose the entirety of the two sentences on FMIC00012 beginning with "Mudra" and ending with "triggered."

11

denial process, but the second half of the sentence starting with "but" and ending with "first" is properly redacted as privileged. The other two redactions on FMIC00013 are improper and must be disclosed, as they relate to the claim denial process and not to anticipated litigation.

FMIC00014 contains one redaction, repetitive of two redactions the Court has already held are proper in prior emails contained in FMIC00011-00012. The redaction in FMIC00014 remains proper.

FMIC00015 contains redactions repetitive of those addressed in FMIC00012 and must be disclosed in part accordingly.[54]

FMIC00016 contains two redactions. The first is repetitive of a redaction in FMIC00013 which must be disclosed as improperly redacted. The second redaction is proper.

FMIC00017 contains two redactions. The first redaction is proper as to the first and second paragraphs contained therein, but improperly redacted as to the third paragraph as it relates to the coverage decision-making process.[55] The second redaction is proper.

---

[54]    As the Court held with FMIC00012, the paragraph on FMIC00015 beginning with "Mudra" and ending with "triggered" has been improperly redacted and must be disclosed, as this was part of the coverage decision-making process.

[55]    The third paragraph which must be disclosed begins with "I would" and ends with "[t]hank you." FMIC00017.

12

### 3.    FMIC00021, FMIC00022, and FMIC00024.

FMIC00021 contains one redaction. As this relates to the coverage decision-making process,[56] this is improperly redacted and discoverable.

FMIC00022 contains one redaction. This redaction is proper.

FMIC00024 contains one redaction. This redaction is proper.

### 4.    FMIC00040-00041

FMIC00040 contains two redactions. Both redactions are proper, as these emails were created long after all the coverage making decision processes and involve anticipated litigation.

FMIC00041 contains one redaction. This redaction is proper, as these emails were also created far after all the coverage making decision processes and involve anticipated litigation.

### 5.    FMIC00054, FMIC00069, FMIC00071, and FMIC00073-FMIC00074

All of the redactions in FMIC00054, FMIC00069, FMIC00071, and FMIC00073-FMIC00074 are proper. While these documents were created within the window of the claim denial process, they are not relevant to the claim denial process and instead focus on anticipated litigation.

---

[56]    This redaction illustrates the coverage decision-making process that Miernicki described in his deposition. *See* Doc. 54-5 (Tr. Miernicki).

### 6.   FMIC02393, FMIC02447, FMIC02448-02464

FMIC02393 contains four redactions. All are improper. This document contains analysis from the claims adjuster, Miernicki, assigned to Plaintiff's tender, and is directly related to the coverage decision-making process and Plaintiff's bad faith claims. This is the rationale that Plaintiff seeks and to which Plaintiff is entitled to discover. All redactions on FMIC02393 must be disclosed.

FMIC02447 contains two redactions. While the exact nature of the document is unclear from the limited portion Defendant submitted, based on Defendant's description of the document these redactions are proper.

FMIC02448-02464 is redacted in its entirety. The entire document has been improperly redacted and must be disclosed. Defendant describes this document as a "draft coverage position letter," and asserts that the lawyer who prepared this document was "providing legal advice to First Mercury in the form of a suggested draft coverage position."[57] I disagree. Instead, this is general business practice relating to the company's claim handling procedures leading up to the issuance of its denial of coverage. Just because attorneys were involved in the practice of denying this claim does not change this document's nature; it was prepared in the

---

[57]   Doc. 77 at 13-14.

business course of claims adjusting.[58] This is directly relevant to Plaintiff's bad faith claim, and should be disclosed accordingly.

## III.    CONCLUSION

Defendant's requested *in camera* review has been completed. Defendant must disclose the parts of the withheld documents which the Court has found were improperly redacted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[58]    Under the Court's prior Order, this is exactly the kind of document that Plaintiff is entitled to discover. Doc. 68 at 11 ("Plaintiff is entitled to discover First Mercury's underlying rationale for denying the claim. . . Defendant is compelled to produce copies of its communications with in-house and outside coverage counsel that were created during the coverage decision-making process, specifically discuss that process, or are relevant to that process.").